UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 1:03-CR-087 |
| | ) | |
| JERRY JARRETT | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the Court are Defendant Jerry Jarrett's ("Jarrett's") Objections to the Presentence Investigation Report as well as a request for a variance from the advisory sentencing guidelines range pursuant to 28 U.S.C. §3553. Jarrett's counsel filed his Sentencing Memorandum on September 13, 2011. The Government responded on October 17, 2011 to which Jarrett replied on November 4, 2011. The cause was set for a Sentencing hearing on November 7, 2011 at which time counsel made their respective arguments as to the sentence to be imposed. The undersigned took the matter under advisement and reset the sentencing to December 5, 2011. For the following reasons, as well as the reasons stated on the record at the Sentencing hearing, Jarrett's objections to the Presentence Investigation Report will be DENIED in part and GRANTED in part. The request for a variance from the advisory sentencing guidelines will be GRANTED in part.

On December 14, 2004, a jury convicted Jarrett on three counts of money laundering, and particularly of knowingly laundering proceeds from drug transactions, in violation of 18 U.S.C. §1956(a)(1)(B)(i), one count of money laundering in violation of 18 U.S.C. §1957, and two counts of structuring in violation of 31 U.S.C. §5322(b). Thereafter, Jarrett sought to have his indictment

1

dismissed based on a theory of vindictive prosecution. The undersigned granted that motion, vacated the jury verdict, and the Government appealed. On appeal, the Seventh Circuit Court of Appeals reversed and remanded concluding that Jarrett had not proven vindictive prosecution and reinstated the jury verdict. On remand, the probation officer prepared a presentence investigation report wherein he calculated the base offense level to be 26 and the criminal history category to be 1. Based on these calculations, the probation officer determined the sentencing guideline range to be 63 to 78 months.

## DISCUSSION

The Supreme Court's decision in *United States v. Booker,* 543 U.S. 220 (2005), held that the Guidelines were to be advisory, and the Court's more recent decision in *Rita v. United States,* --- U.S. ----, 127 S.Ct. 2456(2007), confirms that, as far as the sentencing court is concerned, the guideline range is simply one of the several factors listed in 18 U.S.C. § 3553 that must be considered in arriving at a just sentence, "sufficient, but not greater than necessary," to meet the traditional purposes of criminal sentences. The above language, also referred to as the "parsimony provision" of §3553(a), has become the "guidepost for sentencing decisions post- *Booker," United States v. Ferguson,* 456 F.3d 660, 667 (6th Cir.2006). Thus, a sentencing judge must "give respectful consideration to the Guidelines," but has the discretion to tailor the sentence in light of other statutory concerns as well. *Pepper v. United States,* ___ U.S. ___, 131 S.Ct. 1229 (2011) (quoting *Kimbrough v. United States,* 552 U.S. 85 (2007). This is consistent with the longstanding general notion that "the punishment should fit the offender and not merely the crime," *Williams v. New York,* 337 U.S. 241 (1949).

In this circuit, a district court is required to engage in a three-part sentencing procedure.

First, the sentencing judge must be assured that the Guidelines sentence is properly calculated. Then, the judge must give the defendant an opportunity to identify any of the 18 U.S.C. §3553(a) factors that might warrant a non-Guidelines sentence; and third, the judge must arrive at a just sentence by stating which factors influence the final sentence. *United States v. Curb,* 626 F.3d 921, 926 (7th Cir. 2010). But, as the Seventh Circuit has explained, this procedure demands that the court "sentence based on18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence." *United States v. Sachsenmaier,* 491 F.3d 680, 685 (7th Cir.2007). Indeed, the district court's task is to "consider" the seven listed factors contained in § 3553(a), and then to employ that consideration in arriving at a sentence that coincides with the parsimony provision, (i.e., is sufficient but not greater than necessary to accomplish the retributivist (just deserts/punishment) or utilitarian (promoting respect for the law/deterrence, protecting the community, rehabilitation) theoretical purposes of sentencing listed in § 3553(a)(2)). *See United States v. Ortiz,* 502 F.Supp.2d 712, 714 (N.D.Ohio 2007). Although the judge may, absent non-frivolous arguments to the contrary, often say little when he imposes a guideline sentence, he must respond when "a party contests the Guidelines sentence generally under § 3553(a)-that is argues that the Guidelines reflect an unsound judgment, or, for example, that they do not generally treat certain defendant characteristics in the proper way-or argues for departure [.]" *United States v. Santoya,* 493 F.Supp.2d 1075, 1078 (E.D.Wis.,2007) (quoting *Rita,* 127 S.Ct. at 2468).

### I. Guidelines Calculation

Turning first then to the calculation of the guidelines sentence, Jarrett has proffered several objections to the presentence report which, he contends, affect the proper calculation of the Guidelines sentence. Each of these arguments shall be addressed in turn below.

3

### a. Calculation of the Base Offense Level

At paragraph 15 of the presentence report, the probation officer calculated Jarrett's base offense level to be 16. This calculation was based on U.S.S.G. §2S1.1(a)(2) which provides that in money laundering cases, the base offense level is 8 plus the number of offense levels from the table in §2B1.1. In turn, §2B1.1 provides for a graduated increase in the base offense level based upon the amount of laundered funds. Based upon the Government's evidence that Jarrett laundered $73,000.00, the probation officer added 8 levels in accordance with §2B1.1(b)(1)(E), leaving Jarret with a base offense level of 16.

Jarrett asserts that the probation officer erred in concluding that the amount of the laundered funds was $73,000 because some of the laundered money was given to him by the drug dealers to pay their income taxes. Thus, he claims the probation officer erred in assessing an additional 8 levels. Jarrett's argument is akin to an argument he made in his prior response to the Government's request for an Order of Forfeiture. In that response, Jarrett, citing to a Supreme Court decision in *United States v. Santos*, 553 U.S. 507 (2008), argued that the Government did not prove the deposits into the Left-Filled corporate account from the two drug dealers for whom Jarrett laundered money were "net proceeds" of drug activities, as opposed to "gross proceeds." The undersigned, citing a number of cases disagreeing with *Santos*,[1] concluded that the Government is not required to prove

---

[1] Because the Supreme Court did not issue a majority opinion in *Santos*, all lower courts to have considered the issue raised in that case have determined that the decision is limited to the "position taken by [the concurring member] in the judgment on the narrowest grounds." *Marks v. United States*, 430 U.S. 188,193 (1977). Thus, in line with *Marks,* these courts have concluded that Justice Stevens' concurrence limits the "profits" definition of "proceeds" to money laundering cases involving a gambling operation like the one in the *Santos* case. *United States v. Howard,* 309 Fed.Appx. 760, 771 (4th Cir.2009) ("Because *Santos* does not establish a binding precedent that the term 'proceeds' means 'profits,' except regarding an illegal gambling charge, we are bound by this Court's precedent establishing that 'proceeds' means 'receipts.' ") (unpublished); *See also United States v. Fernandez,* 559

4

"net proceeds" in its forfeiture request.

This same analysis applies in the context of the guideline calculation. Indeed, as both the Government and the probation officer note, the amount factored into the guideline calculation is the precise amount listed in the counts under which Jarrett was indicted and the amounts a jury convicted him of laundering. In particular, the indictment charged, and a jury convicted Jarrett, of issuing checks totaling $54,000 from his company account, ("Left Filled Inc.") to Carlos Ripoll and three checks totaling $18,000 from the same account to a second drug dealer. (See Indictment ¶¶12-13).

"A defendant must do more than simply deny the findings presented in a pre-sentence investigation report; he must present evidence." *United States v. Gordon*, 495 F.3d 427, 432 (7th Cir. 2007). Jarrett has produced no evidence that contradicts the amounts for which he was convicted pursuant to the indictment and therefore, no adjustment to the base offense level is warranted.

### b. Specific Offense Characteristic

Jarrett also objects on two grounds to the six level increase in his base offense level under 2S1.1(b)(1) which provides for a six level increase if the defendant " knew or believed that any of the laundered funds were the proceeds of, or were intended to promote ...an offense involving the manufacture, importation, or distribution of a controlled substance. " U.S.S.G, § 2S1.1(b)(1). First,

---

F.3d 303 (5th Cir.2009); *United States v. Schlesinger*, 261 Fed.Appx. 355 (2nd Cir. 2008) (limiting interpretation of *Santos* and concluding that the forfeiture provision calls for the forfeiture of all "proceeds" of unlawful activities; "proceeds" are not limited to the net gain or profit realized from the offense."); *United States v. Casey,* 444 F.3d 1071 (9th Cir. 2006); *United States v. Miller*, 2009 WL 2949784 (D. Kan. 2009) ("Given the nature of the *Santos* opinion, the Court disagrees with the defendant that it should be extended to the definition of proceeds in the context of forfeiture...").

Jarrett contends that he did not know the laundered funds were from drug related activities. Second, he asserts that because he was charged with laundering drug money, an essential element of his crime was his knowledge that the laundered funds were the proceeds of controlled substance distribution. Thus, he reasons that to increase his offense level because he knew the money was drug proceeds constitutes improper double counting.

Without much in the way of discussion needed, the first argument fails. The indictment specifically charged, and the jury convicted Jarrett, of knowingly laundering drug money. (See Indictment, ¶¶7, 8, and Counts 1-3). This conviction was supported at trial by testimony from the drug dealers involved that Jarrett was aware that they were drug dealers and that he offered to launder their drug proceeds. In fact, the undersigned discussed Jarrett's knowledge in its Opinion and Order on the Government's Forfeiture request:

> the evidence at trial clearly supports the Government's position that Jarrett knew the money he received from Goode and Ripoll constituted drug proceeds. Goode testified at trial that Jarrett "explained to me that he could help me clean up my drug money." (Trial Trans. Vol. 2, p. 200). Goode also testified that he delivered money to Jarrett and Jarrett provided him checks to "legitimize the money I got from selling drugs." (*Id.* at p. 201). Ripoll further testified that the only money he had was drug money and that Jarrett told him that he would "clean up" his money by depositing the money into the Left-Filled, Inc. account. (Trial Trans. Vol. 3, pp. 263-265). Both Ripoll and Goode testified that Jarrett created false purchase agreements and stock certificates for Left-Filled, Inc. to make it appear that the money was for a legitimate corporate investment. (Trial Trans. Vol. 2 pp. 202-205; Vol. 3 pp. 193-195). Thus, it is clear from the record that there is sufficient evidence for the Government's contention that Jarrett had knowledge that the money he was given was from illegal drug activity.

7/20/2011 Opinion and Order [DE 200] at p. 6. Accordingly, Jarrett's argument that he did not know the laundered funds were proceeds from drug transactions is not well-taken.

As for Jarrett's second argument, "[i]mproper double counting occurs 'when a district court

6

imposes two or more upward adjustments within the same guidelines range, when both are premised on the *same* conduct.'" *United States v. Haines,* 32 F.3d 290, 293 (7th Cir.1994). That is, the same conduct cannot be described in two different ways to justify two different enhancements when each leads to a separate upward adjustment. *United States v. Parolin,* 239 F.3d 922, 929 (7th Cir.2001); *United States v. White,* 222 F.3d 363, 375-76 (7th Cir.2000). In addition, although premising multiple enhancements on "identical facts" constitutes impermissible double counting, *United States v. Szakacs,* 212 F.3d 344, 353 (7th Cir.2000), the presence of some overlap in the factual basis for two or more upward adjustments does not automatically qualify as double counting. *Parolin,* 239 F.3d at 929 (citing *Haines,* 32 F.3d at 293). When two enhancements address distinct aspects of the defendant's conduct, the application of both does not constitute double counting. *United States v. Myers,* 355 F.3d 1040, 1044 (7th Cir.2004); *White,* 222 F.3d at 376; *United States v. Lanzotti,* 205 F.3d 951, 957 (7th Cir.2000).

In this case, it is clear that double counting is not an issue. In *United States v. Long,* 977 F.2d 1264, 1269 (8th Cir.,1992), the Eighth Circuit considered the identical argument made by Jarrett presently and concluded that no double counting occurred. In that case, the defendant was convicted of the same money laundering statute as Jarrett and, as was the case here, the Government had to prove that: (1)the defendant knew the proceeds involved in the transactions were the proceeds of some form of unlawful activity; and (2) the transactions in question were designed to "conceal or disguise the nature, the location, the source, the ownership, or the control of [drug] proceeds," 18 U.S.C. § 1956(a)(1)(B)(i) and (3) they knew the transactions were designed to so conceal or disguise drug proceeds. *Long,* 977 F.2d at 1269. The panel went on to explain that although the defendant was convicted under 18 U.S.C. § 1956(a)(1)(B)(i):

7

> [t]hat section prohibits not just the laundering of drug money, but the laundering of any proceeds from a myriad of specified unlawful activities, many of which have nothing to do with narcotics sales. *See* 18 U.S.C. § 1956(c)(7) (1988). Thus, rather than resulting in double counting ... section 2S1.1(b)(1) distinguishes between classes of money launderers, punishing more severely those who knowingly launder proceeds from narcotics sales. Accordingly, we hold that the enhancement of [the defendant's] sentence under section 2S1.1(b)(1) did not result in improper double counting.

*Id.* See also *United States v. Olson*, 2001 WL 914471, *2 (N.D.Ill.,2001) (holding no double counting under 2S1.1(b)(1)(B) and 2S1.1(b)(2)(B) because the two different enhancements take into account different factors). In light of this authority, the defendant's objection is overruled.

### c. Sophisticated Scheme

Next, Jarrett object to the two level increase in his base offense level pursuant to section 2S1.1(b)(3). Section 2S1.1(b)(3) provides that if the offense involved "sophisticated laundering," the offense level may be increased by two levels. U.S.S.G. § 2S1.1(b)(3). The commentary to this section defines "sophisticated laundering" in part as "complex or intricate offense conduct pertaining to the execution or concealment of the 18 U.S.C. §1956 offense" that typically involves the use of, inter alia, (i) fictitious entities; (ii) shell corporations or (iii) layering (defined as "two or more levels of transactions, transportation, transfers, or transmissions, involving criminally derived funds that were intended to appear legitimate.") *Id.* § 2S1.1 cmt. n. 5(A) & (iii). Jarrett contends that there was an insufficient showing at trial that the offense involved sophisticated laundering.

Recently, in *United States v. Landwer*, 640 F.3d 769, 771 (7th Cir., 2011), the Seventh Circuit noted that, "application of the adjustment 'is proper when the conduct shows a greater level of planning or concealment than a typical fraud of its kind.'" *Id.* (quoting *United States v. Knox*, 624

8

F.3d 865, 871 (7th Cir.2010). In this case, Jarrett argues, and the Government concedes, that Left-Filled was started as a legitimate company, not as a fictitious entity to launder money. Later, when Jarrett became associated with Goode and Ripoll, Jarrett received drug proceeds, placed them into Left-Filled's bank account and then paid the drug dealers (and the IRS) from that same account. In addition, Jarrett retained some of the money as his "laundering fee." Thus, Jarrett contends the scheme cannot be characterized as anything other than a typical money laundering scheme.

In response to Jarrett's objection to the enhancement under U.S.S.G. § 2S1.1(b)(3), the probation officer stated that:

> Mr. Jarrett was found guilty in Count 1 of the Indictment which in part states that he deposited proceeds from drug transactions into a corporate bank account at Citizens Financial Services; prepared false stock purchase agreements and stock certificates to make it appear that the deposited money orders and cash were for legitimate business investments in his corporate account that being, Left-Filled Inc.

(Second Addendum, at p. 4). The Government further contends that the "sophisticated nature" of the scheme is reflected in evidence that Jarrett prepared false investment documents to disguise the nature of his transactions, utilized corporate bank accounts to disguise transactions, made cash deposits in amounts sufficient to avoid various reporting requirements and gradually withdrew funds from the accounts to avoid detection.

Having reviewed the evidence, the court concludes that the scheme falls short of qualifying as "sophisticated" for purposes of applying the enhancement As noted, the scheme itself was typical of all money laundering operations. Jarrett took in dirty money, cleaned it up, and kept some for himself. Further, the "concealment" that the Government seeks to pounce on as a way to justify the enhancement is, in itself, rather unsophisticated and typical of money laundering operations.

Accordingly, the court concludes that the two point adjustment does not apply and Jarrett's objection is SUSTAINED.[2]

### d. Conclusion

In sum then, with the above rulings the court concludes that Jarrett's total offense level is 24, his criminal history category is I and his advisory guidelines range is 51-63 months.

## II. Section 3553 Factors

Having concluded that the appropriate advisory guidelines range is 51 to 63 months, the court turns now to an assessment of the other factors set forth in 18 U.S.C. §3553. The complete list of factors to be considered by the court include the following:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed-

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

---

[2] In the PSR, the probation officer provided a guidelines assessment of how Jarrett would have fared under the 1998 Guidelines since those guidelines were more favorable to him. Under the probation officer's calculations using the 1998 Guidelines there appears to be no "sophisticated laundering" enhancement that would have been applicable to Jarrett.

10

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553.

In his sentencing briefs, Jarrett seeks a sentence of supervised release or community confinement rather than a term of imprisonment. Jarrett argues that a Guidelines sentence does not adequately reflect the sentencing factors in §3553. He relies almost exclusively on factors 1 and 2 and, more particularly, on the fact that he has no criminal history aside from the present convictions and that he has been a productive member of society until the instant offense and during his time awaiting sentencing. Moreover, he contends that while the offense is a serious offense, a sentence, even at the low-end of the advisory guidelines range, is more than is necessary to promote respect for the law, deter others from committing a similar offense and to protect the public from future crimes committed by him. Finally, Jarrett emphasizes his increased age and the fact that he has been disbarred and would not be in a position under these circumstances to re-offend

Looking first to the nature and circumstances of the offenses, it is clear that the offenses in this case are serious ones intended to be punished substantially by Congress. By his activities, Jarrett facilitated the distribution of illegal drugs by aiding drug dealers in concealing their profits. This is precisely the type of conduct that Congress sought to punish so much so that in 2001 Congress upped the base offense level for defendants convicted under 18 U.S.C. § 1956(a)(1)(A), (a)(2)(A), or (a)(3)(A) because those subsections apply "to defendants who encouraged or facilitated the commission of further crimes." Clearly, this reflects Congress's policy belief that longer

11

sentences in money laundering cases, especially laundering of drug proceeds which promotes additional drug crimes, are necessary to deter others from committing similar offenses.

This said, however, there are factors particular to this case that mitigate in favor of a lower sentence in this case. As noted, aside from the instant offenses, Jarrett has no criminal history and the offenses of conviction were not violent offenses and do not pose a substantial threat to the public. Moreover, Jarrett utilized his law practice to facilitate the offenses and given the events that have transpired since his conviction, namely his disbarment, it is doubtful that Jarrett is a substantial risk to the public to re-offend.

Furthermore, one of the theoretical goals of §3553(a) is retributive, that is, that the purpose in sentencing criminals is that every crime demands payment in the form of punishment. Here, having reviewed the characteristics of this defendant, the court concludes that not only will Jarrett be punished pursuant to the sentence imposed presently but he has also been punished substantially in ways other than through imprisonment. Indeed, since his conviction for the instant offenses Jarrett has been disbarred and unable to secure employment. He is, for all practical purposes, destitute, having filed for bankruptcy protection in 2005 and despite a bankruptcy discharge, he has undischargeable tax liens and student loan debts of $45,023.00. Jarrett also is subject to a personal money judgment via the Forfeiture Order in the current case for more than $90,000. Thus, not only has Jarrett been convicted of crimes for which he will pay a debt to society, he is also been substantially punished economically.

Finally, in examining the guideline range, the court finds that the calculated range does not take into account some, if not all, of the above factors. Through no fault or delay of Jarrett's, it has been over a decade since the offense conduct occurred and the guidelines have changed

(unfavorably to him) during that time. Under the 1998 Guidelines which would have been in effect had Jarrett been indicted with more expediency, Jarrett's range would have been 46-57 months. (See *supra* regarding Congress' decision to increase the guidelines in 2001). For the reasons set out above as well as the reasons stated in open court after hearing the argument of counsel, the court concludes that a sentence of 37 months is "sufficient but not greater than necessary" to promote the traditional purposes of criminal sentencing. Accordingly, 37 months shall be the sentence imposed in this case.

Moreover, Jarrett has requested, and the Government does not oppose, that he be permitted to voluntarily surrender after December 27, 2011. That request will also be GRANTED.

SO ORDERED.

This 5th day of December, 2011.

/s/ William C. Lee
United States District Judge